IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAQUEL LOPEZ MUÑOZ, | ) |
| | ) |
|    Plaintiff, | )   CIVIL NUM: |
| v. | ) |
| | )   CIVIL RIGHTS VIOLATION |
| FEDERAL BUREAU OF INVESTIGATION | )   DISCRIMINATION |
| FBI SAC JOSEPH GONZALEZ | )   RETALIATION |
| FBI AO AMBER DUBESHTER | )   DUE PROCESS |
| | ) |
|    Defendant, | )   JURY TRIAL IS DEMANDED |
| _____ | ) |

**COMPLAINT**

COMES NOW complainant, Raquel Lopez Muñoz, through the undersigned counsel, and respectfully alleges, states and requests, as follows:

**I.      NATURE OF ACTION**

1.     This is an action brought by the Raquel Lopez Muñoz ("Lopez-Muñoz" or "Complainant"), pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq. ("ADA"), against her employer, the Federal Bureau of Investigation, SAC Joseph Gonzalez, and AO Amber Dubeshter (henceforth "FBI" or "Defendant"), seeking compensatory damages as result of discriminatory treatment where Complainant was not provided feasible reasonable accommodations for her physical and mental disabilities, was subjected to disability-based discrimination, and was a victim of retaliation for claiming a reasonable accommodation and a non-hostile work environment, having engaged in protected activities which culminated in her constructive discharge and termination.

2.     This complaint is also brought by Complainant for hostile work environment and constructive discharge, and for violation of her constitutional Fifth Amendment due process rights in her employment evaluation, which constituted a taking of property and a deprivation of her rights to be federally employed.

**II.     JURISDICTION AND VENUE**

3.     This Court has subject matter jurisdiction over Complainant's federal and constitutional claims pursuant to 28 U.S.C. section 1331 as well as under the Americans with Disabilities Act of 1990 as amended ("ADA"), 42 U.S.C. sections 12112-12117.

4.     This District Court is the correct venue for this complaint as the actions alleged in the complaint took place in Puerto Rico, 28 U.S.C. section 1391.

**III.    ADMINISTRATIVE REMEDIES**

5.     On December 15, 2023, Complainant, who is over the age of 40, filed timely

charges of employment discrimination (disability and retaliation) with the Anti-Discrimination Unit of the Equal Employment Opportunity Commission ("EEOC").

6. The Anti-Discrimination Unit of the Equal Employment Opportunity Commission still has not rendered a decision on the complaint that was filed, and plaintiff out of an abundance of caution and in order to preserve all her rights and claims, files the present complaint.

7. Complainant is a resident of Puerto Rico and citizen of the United States of America. Complainant has a Master in Business Administration (MBA). She suffers from a medical condition diagnosed as epilepsy by a neurologist which was known to the FBI. The postal address of Complainant is Raquel Lopez-Munoz, 16th Street # S-6, Berwind Estates, San Juan, Puerto Rico, 00924 with telephone number 787-671-2567.

8. At all times relevant herein, Complainant was an employee of the FBI, within the meaning of the applicable statutes, who suffered from physical and mental disabilities of the type protected by said statutes. She was employed by the FBI from June 22, 1997 to December 16, 2023, pursuant to her resignation letter as a GS-12 employee tendered on December 11, 2023.

9. The FBI is a federal agency of the United States of America, with powers and faculties to sue and be sued.

10. The FBI is an employer, within the meaning of the applicable statutes, which at all times relevant herein had more than 500 employees.

11. Complainant was employed by the FBI from June 22, 1997 to December 16, 2023 when she was forced to tender her resignation due to the FBI's knowledgeable and intentional violation of the reasonable accommodations that had been granted to her due to her epilepsy condition, and because of the hostile work environment as to which she was subjected culminating in her deprivation of due process rights in her employment evaluation, and lack of any response by her superiors at the FBI to correct and provide her with the reasonable accommodations that had been granted before and without any acknowledgement or attempt to remedy the situation.

12. In 06/22/1997 Complainant was named Support Services Technician (SST) (known today as Operational Support Technician (OST), a career position during June 1997 until December 2007. The Complainant was named Office Services Supervisor (OSS) during December 2007 until December 2016. Later Complainant held the position of Mission Support Analyst (MSA) from December 2016 until December 2023, which she held until her constructive dismissal on December 11, 2023.

13. At all times relevant herein, Complainant was duly qualified to carry out the duties of her positions; she performed her functions with a high degree of excellence, diligence and

interest in her work; and, she expected to be treated equally and to be provided reasonable accommodations for her physical and mental disabilities, without being subjected to unlawful discrimination on the basis of her disabilities or victim of retaliatory acts for having engaged in protected activities.

14.     Complainant's physical and mental conditions substantially impaired some of her major life's activities, such as performing manual tasks, taking care of herself, working, thinking, concentrating and sleeping. During periods of medical leave, the medical treatment helped her to recover enough to be able to return to work with some residual limitations and while under medications. Complainant was qualified to perform the essential functions of her employment position, with reasonable accommodations.

15.     At all times relevant herein, FBI SAC Joseph Gonzalez is an adult male individual, who is an agent and employee of the FBI, acting within the scope of such agency and employment, and performed supervisory functions and fulfilled duties for Defendant, as Special Agent in Charge of the San Juan Division, in Puerto Rico.

16.     At all times relevant herein, FBI AO Amber Dubeshter, is an adult female individual, who is a professional support and employee of the FBI, acting within the scope of such agency and employment, and performed administrative duties and other functions for Defendant as Administrative Officer of the FBI, San Juan Division in Puerto Rico.

**IV.    CHRONOLOGICAL FACTS**

17.     On or about August of 2021, Special Agent in Charge (SAC) Joseph Gonzalez arrived at the San Juan Field Office and held a meeting with the executive staff. At that meeting he advised that he did not care about the daily time entry/departure of their employees as long as the work was up-to-date and the employees could be reached via telephone. Complainant did not have a bureau phone (FBI) assigned to her, but she provided her personal cellphone number to him and his secretary, in addition to other coworkers.

18.     On or about January 2022, Administrative Officer (AO) James Poland advised the Complainant that she was to be removed from her office (which was provided to her as a Reasonable Accommodation due to her epilepsy condition by prior FBI officers at the San Juan Office), and as to which the management for the San Juan Division was aware, and knew for many years, as Complainant could dim the lighting system in the office assigned to her to avoid any seizures and migraines.

19.     As a result of the above, Complainant's office was reassigned to Task Force Officer (TFO) Digno Cartagena (a Lieutenant from the Police of Puerto Rico) with no consideration as to

Complainant as an FBI employee with several years in the agency and as an epileptic patient with a reasonable accommodation.

20. Complainant requested SAC Joseph Gonzalez to provide her with another office in which the lighting system could be dimmed, but he refused saying that he had other priorities and had to give her office to accommodate the Task Force Officer.

21. Complainant further asked SAC Joseph Gonzalez where she was supposed to perform her duties, as the regular work stations/desks shared the same lighting and such system could be dimmed, but it would affect the performance of other coworkers. SAC Gonzalez replied that he would send her to work out at her husband's office (Victim Specialist Orlando Rios-Walker, who also works for the FBI at the San Juan Office). Complainant asked SAC Gonzalez what would have happened if VS Rios-Walker had not been her husband and he replied that Rios Walker was her husband.

22. Due to the fact that Complainant was removed from her office, and furthermore did not have therefore access to the FBI computer, SAC Gonzalez further authorized her to have access to VS Rios-Walker ERAS computer (laptop) via email to the ITS, so that Complainant could telework from her home.

23. The removal from her office changed her office environment giving rise to a hostile work environment. Complainant had to divide the use of the office held by VS Rios-Walker, making it hard for both of them to work there at the same time. VS Rios Walker and Complainant had to create a logistic plan as to ensure work was performed via telework or physically at work so both could use the office to complete reports and use the office printers. Basically, working times were split between VS Rios Walker and Complainant. At times they had to use her husband's ERA's computer further complicating and needlessly creating a hostile work environment. Working under said conditions was stressful and chaotic in order to meet work deadlines.

24. Because of the above, Complainant opted to telework from her home, as her job required a lot of reports, emails and telephone conversations since she did not want to create further problems and or complications with the use of her husband's office. On several occasions, Complainant would send a message to SAC Gonzalez via WhatsApp (to his personal phone) advising him that she would be working from her home and he approved it. It should be noted that Complainant tendered the Program Coordinators (PCORs) inquiries via email or by phone (using her personal phone) as the FBI took away her bureau cellphone in 2019.

25. There was an incident in which her husband VS Rios-Walker, was verbally questioned by his immediate supervisor SSA Michael Dubravetz for allowing Complainant to use

4

his FBI office. It turns out that SSA Dubravetz had not been notified of the changes made by SAC Gonzalez and was unaware of the office reassignment.

26. On or about June 2022, Complainant had two epileptic seizures at her new office as a result of the bright light system, since there was no dimmer light system in place. Her husband was notified to take her home, and SAC Gonzalez arrived at the parking lot in his official vehicle along with ASAC's Guillermo Gonzalez and RJ Romero while Complainant was being assisted by her husband. He explained to SAC Gonzalez that Complainant had two seizures due to the strong lighting system in the office and further complained that nothing was being done to remedy the problem and it was creating a hostile environment to her health.

27. In another incident, Complainant had a seizure during an executive meeting in front of the SAC and AO Poland, the SAC's secretary and other attendees. Complainant had to leave the office in order to continue working from her home.

28. On or about February 2023, SAC Gonzalez called Complainant to inform her that her access to VS Rios Walker ERAS computer was going to be removed. This further complicated and created a hostile work environment as she was being denied the tools and/or equipment to properly do her job and meet deadline expectations.

29. On or about September 2023, SAC Gonzalez called Complainant in the presence of ASAC RJ Romero-Barbosa to advise Complainant that an administrative investigation had been opened against Complainant for WebTA fraud. Complainant could not believe such thing, as she had not been notified of any formal investigation against her. Complainant reminded SAC Gonzalez that during a staff meeting he had said that he did not mind the day, or the entry/leaving times as long as the work was up to date and Complainant was available on the phone; and that he had signed off on all her time records and had not been notified of any deficiency. SAC Gonzalez stared down at Complainant and did not refute her. Complainant further told SAC Gonzalez that if asked by Office of Professional Responsibility (OPR), Complainant was going to tell the truth that included what SAC Gonzalez had said at the meeting regarding the time attendance log.

30. Even though no formal notification was given to Complainant, nor was she told the number of hours that she was arguably missing, Complainant told SAC Gonzalez in order to appease him that she would work extra time in order to make up for whatever time was needed. Complainant asked SAC Gonzalez to give her the arguably missing times so she could make her adjustments as a mitigation effort using all her leave or Leave Without Pay (LWOP), but SAC Gonzalez refused saying that the information was secret/confidential. Notwithstanding, Complainant stressed that she was not asking to use her mitigation efforts as to withdraw the

administrative investigation. Complainant wanted to face the "administrative investigation" but she never received any formal notification nor phone call from OPR.

31. The above incident further created a hostile work environment, where SAC Gonzalez had charged her and adjudged her with time attendance fraud but had refused to provide any evidence to back-up such claims. This caused extreme anxiety and stress on the Complainant and further exacerbated her hostile work environment and provoked seizures and migraines; worsening her medical condition. Because of the lack of transparency by SAC Gonzalez, Complainant had a gnawing suspicion that SAC Gonzalez was lying to her and that it was all a Machiavellian maneuver or ploy to get her to resign her position because he did not want epileptic people in the office. What changed in the office was the arrival of SAC Gonzalez and he did not want having to work with an epileptic person. That is discrimination.

32. SAC Gonzalez refused to provide dates and/or hours to Complainant to leave her in a limbo of uncertainty so that she could not verify whether his allegations were correct or not. SAC Gonzalez also ordered Complainant to sign in/out in the Front Office area from 7:15 AM to 4:00 PM in order to ensure she was working.

33. Starting from September 7, 2023, Complainant started to arrive early to work (without claiming it) and also worked during lunch time, and once she arrived or left the office, she would send a message to SAC Gonzalez advising him or her arrival/ departure. Up to December 13, 2023, Complainant had worked 72.25 extra hours as mitigation.

34. On November 13, 2023, Complainant was called into a meeting with SAC Gonzalez and the recently appointed Administrative Officer (AO) Amber Dubeshter, who is the wife of retired San Juan Special Agent in Charge (SAC) Rafael Riviere. SAC Gonzalez and ex-SAC Riviere are friends and SAC Gonzalez promoted his friend's wife to the position of Administrative Officer that under information and belief Dubeshter had never held before.

35. At said meeting in November 13, 2023, SAC Gonzalez stated that based on the administrative inquiry that was pending against Complainant, that he would have to rate her employment performance as "Inconsistent Performer" in the Professional and Integrity category because allegedly Headquarters (HQ) instructed him to do so. SA Gonzalez never told Complainant who in HQ had given such instruction, and further did not disclose the status of such alleged inquiry and when it would be completed. SAC Gonzalez adjudged the "Inconsistent Performer" even though Complainant never received any formal notification of an administrative inquiry.

36. SAC Gonzalez incurred in a crass violation of ethical and procedural standards in giving Complainant a rating of "Inconsistent Performer" due to an "administrative inquiry" when Complainant was never afforded the opportunity to defend herself and to disprove whatever allegation was being investigated. This was a basic violation of her due process rights which constituted a besmirching of her record and a taking of her employment rights to seek other federal employment or position. It is known that federal agencies disfavor employees who have a label of "Inconsistent Performer" on their records.

37. SAC Gonzalez actions aggravated the hostile work environment for the Complainant because her rating of Inconsistent Performer, where she had complied with her work to satisfaction all her prior years, did not warrant such a classification. Complainant was never notified by OPR of the initiation of any inquiry against her, was never interviewed by OPR and to this date does not know if such inquiry ever existed or was made up by SAC Gonzalez to force her to quit her job.

38. SAC Gonzalez refused to disclose upon several verbal requests of information from Complainant the details of the alleged Web TA fraud and who at FBI Headquarters had provided instructions as to changing her performance rating to "Inconsistent Performer". It is to be noted that all her prior written evaluations contain good performance statements for the work performed and that all goals set for Fiscal 2023 were achieved. In 26½ years of service, this was the only year in which Complainant received an "Inconsistent Performer" rating.

39. It should be noted that the Reviewing Officer for MSA positions are usually from the Resource and Planning Office (RPO) and not the SAC. The fact that SAC Gonzalez conducted the evaluation falls outside the regular practice and becomes a completely irregular practice that added to the hostile work environment.

40. Also at the November 13, 2023 meeting, SAC Gonzalez introduced to Complainant what would be her new Immediate Supervisor, the newly appointed Administrative Office Amber Dubeshter.

41. SAC Gonzalez told Complainant that AO Amber Dubeshter was knowledgeable in Integrated Program Management Tools (IPMT) matters and that she would be a great asset to help Complainant improve her work performance. AO did not disclose to Complainant her previous position with the FBI and what was her background to make her an expert on MSA matters. Having access to IPTM tools does not mean that the AO is a subject matter expert on MSA roles and duties.

42. AO Dubeshter advised Complainant that she was eager to work with Complainant to improve her work performance and to make sure that she would complete all her working hours because if not that would be considered a disservice and that she did not tolerate such practice. This statement reflected a bias and hostile attitude against Complainant. AO Dubeshter instructed Complainant to meet with her to discuss the new performance plan and that it had to be drafted by Friday, November 17, 2023. It was apparent from AO Dubeshter comments that she was not familiar with Complainant previous consistent performance history records for more than 26½ years. AO Dubeshter demeanor came across as arrogant and opinionated, which added to the hostile work environment.

43. Complainant has held and performed the position of Mission Support Analyst (MSA) for the last 7 years, specifically since December 11, 2016. She had obtained a performance rating of "Consistent Performer" in previous years, and she made possible for the San Juan Division to reach all statistical goals or metrics during FY-2023.

44. On or about November 14, 2023, Complainant received an Email received from AO Dubeshter titled "Performance Plan" with copy to SAC Gonzalez. In that email she stated what would be the <u>new</u> rules for Complainant's performance plan. It should be noted that AO Dubeshter was a newly appointed Administrative Officer without previous experience as AO in San Juan Division or any other FBI Division.

45. In that email, AO Dubeshter wanted to have specific and measurables objectives of an MSA in GS12 role. For an example: in the email AO stated: "I will do training, isn't enough" …. "tell me what specific trainings you will be doing and when you will be doing them". To start, AO Dubeshter had no previous knowledge of Complainant's responsibilities and role. AO Dubeshter, ignored Complainant's performance history and wrote to her to the effect that "I want you to take an active and excited approach to the work you are going to commit to doing this year." This gave the impression that Complainant was not being active in her job and that she was bored with her job.

46. The fact is that the role and responsibilities of an MSA position description was designed and written by FBI Headquarters. The same is very specific and it details the responsibilities and role of the MSA. There was no need for AO Dubeshter to rewrite the responsibilities.

47. Complainant believes that it is <u>unfair</u> and <u>unreasonable</u> to request that objectives be measurable by performing them on specific dates, such as training events. It is really difficult to accomplish objectives or trainings on specific dates due to the continuous operations/

8

investigations being carried out by agents and support staff in the division. Personnel are continuously out of the office deployed on the field for investigation purposes and other activities. This practice conveys unreasonable expectations and bad faith, imposing an unnecessary burden.

48. In addition to the above, AO Dubeshter instructed Complainant to address areas that in fact had been done in previous years as part of standard operating procedures. These instructions conveniently give the impression of both that Complainant did not comply with the same and that AO Dubeshter was knowledgeable and familiar of these matters.

49. On November 16, 2023, Complainant prepared a power point presentation with the Health Measures and three CID Program Measures. On November 17, 2023, AO Dubeshter requested to meet Complainant on Friday November 24, 2023 because she wanted to preview the power point presentation that Complainant was going to use to brief the Supervisors. This request smacks of micromanagement and harassment as Complainant had done this same presentation many times before with the same Supervisors. The intent was to make Complainant feel uncomfortable and to question her ability to do her job properly.

50. On November 24, 2023, AO Dubeshter showed aggressive nonverbal communication during an in-person meeting with Complainant; where she felt threatened and intimidated. The aggressiveness showed by AO Dubeshter included the following: 1. Aggressive eye to eye contact; 2. Both hands clenched; 3. Having her arms crossed; 4. Slapping around and/or gesticulating with her hand in front of her in an aggressive way; 5. Giving her order or instructions in a rude impolite fashion. Complainant advised AO Dubeshter of her epilepsy condition, and that high level of stress, sleep deprived, among others can triggered the seizures and migraines. AO Dubeshter replied that she needed to update her medical records. Complainant replied that her neurological condition was permanent and that in her medical record there was a neurological certificate from 2013 attesting to her epileptic medical condition.

51. On that same day, November 24, 2023, Complainant verbally requested to take four hours of AL to spend time with her children during the Thanksgiving Holiday. AO Dubeshter immediately replied with a rude NO and that she would follow the leave policy in detail, and that leave needs to be requested on advance. AO Dubeshter further stated in a rude way that in case of Sick Leave, Complainant would have to bring her medical certificate that *same* day, confirming her attendance to the doctor's office because she did not want any abuse of leave. She also added, while pointing her finger at Complainant, that "Not on her watch". Complainant asked how to address the situation if an unexpected situation arose while heading to the office, such a flat tire, car accident other, and the AO replied that if such a situation ever arose, it had to be kept to a

9

minimum.

52. Complainant asked the AO how to proceed in case of suffering from epilepsy attack and/or seizure before arriving to the office, since it would be impossible to have a medical certificate that day, and the AO replied that such events had to be kept at a minimum. Complainant had no way to fully control the onset of epileptic seizures and therefore became more anxious in trying to keep the frequency of the seizures at a minimum in order to satisfy AO Dubeshter's arbitrary and unreasonable criteria. Complainant reminded the AO that FBI policy requires medical certificates at the <u>third</u> day of sick leave. Notwithstanding, AO Dubeshter insisted and demanded to receive the medical certificate the same day, which is against FBI Leave Policy. The disparate and discriminatory treatment that AO Dubeshter was subjecting Complainant was with the intent to make her work life miserable creating a hostile work environment; worsening her medical condition and therefore to force or push her to resign.

53. On November 24, Complainant was also subjected to AO Dubeshter's micromanagement and hostile style, in that AO Dubeshter thought that federal agents needed to be deputized in order to perform their duties. MAPA Angela Mori advised that she needed to clear out those federal agents from the TITAN database as they did not need deputations. AO Dubeshter sent Complainant an unfriendly email stating demoralizing remarks by saying that it took her five minutes to find out information in BUNET and CITF that all TFO still were to be deputized. The AO wrongly inferred that all TFO's, including federal agents, had to be deputized.

54. On November 29, Complainant received an email from OGC stating that there was no need to sponsor federal TFOs for US Marshals Deputation because federal TFO's already had federal law enforcement authority. The email said that state, local and tribal TFO's need to be deputized. The above situation further created a hostile environment, where it was evident that her supervisor was taking action against her for not knowing the regulations when in fact it was the AO that did not know the regulation or was twisting the regulations to harass Complainant.

55. On or about December 6, AO Dubeshter went into the Complainant' office and when entering the AO yelled in a loud sarcastic voice "how can you work with barely no lights in your office, I could not do it:" Complainant replied low intensity lights in her office prevented her from having epileptic seizures. AO Dubeshter continued her verbal attack by telling her "I am so disappointed in you". And at the same time shook some paper documents in front of Complainant's face back and forth so close that Complainant thought she was going to get slapped in the face with them. Complainant felt physically threatened and emotionally intimidated and shaken. AO Dubeshter also kept complaining that the documents that Complainant had provided during a squad

IPM meeting gave the wrong information. Complainant respectfully replied that the information was provided by Supervisor Intelligence Analyst (SIA) Wilfredo Lopez and AO Dubeshter stated in a very aggressive way that "everybody thinks they are subject matter experts when they are not, they don't know nothing, and they keep doing thing the way they have been told which is incorrect. She instructed Complainant that she was going to give the introduction in the next squad meeting and that she had to write down whatever she said so she can provide the same information in her other squad meetings. It is to be noted that Complainant had provided squad trainings during her tenure as MSA and there was no need for AO Dubeshter to disrespect her and make Complainant feel inferior with that comment and arrogant attitude. During the afternoon on December 6, 2023, AO Dubeshter sent an instant message (IM) (not an email) to Complainant requesting to stop her one-on-one conversations with the Intelligence Analyst (IAs) as to not give the impression that Complainant was tasking them with duties without the approval of a SIA. It is to be noted that the tone used by AO Dubeshter was demeaning and imposing, creating high level of stress to complainant. Complainant was following direct instructions from ASAC Guillermo Gonzalez as to ensure the IAs help the division fixed the situation and improve the numbers in the measures.

56. On December 7, 2023, AO Dubeshter gave the IPM introduction during a squad meeting and in summary said that the importance of the Integrated Program Management (IPM) is that if an agent wants to become a Program Manager in HQ, they already know how the IPM processes work. When she left the meeting, Complainant told the squad personnel that the importance of the IPM is not what AO Dubeshter explained, but that all 56 offices have the same instructions as to manage or mitigate the threats in their AOR and that they are aligned with the Director's Priorities. AO Dubeshter sold herself as that she was the expert in the MSA area, when she was only an SOS before becoming an AO.

57. On December 11, 2023, Complainant gave a presentation during the Executive Management meeting, in which Complainant had prepared the binders for the squad with the health/program/threat measures, and further provided the IPM overview to the squads, and pointed out that in comparison with last year, the division was performing excellent and that Health Measures already had 7 in GOLD, meaning it was high performing.

58. Notwithstanding the above, AO Dubeshter afterwards called Complainant to her office and she yelled at her that "the briefing you provided to EM, it sucked" And that from that moment on, Complainant needed to inform the AO on the topics, and the AO would be the one to brief the EM. This was a form of power harassment (excessive monitoring, verbal abuse and unreasonable demands) coupled with psychological harassment and verbal abuse. The AO showed

11

aggressiveness during the encounter, she got too close breaking personal space boundaries, pointed her finger at Complainant's face, clenched both hands together, raised her voice, and prohibited Complainant from talking to Program Coordinators, Intelligence Analysts, among other division personnel. It is to be noted that the MSA role encompasses direct communication with key personnel to ensure measures are done according to the Consolidated Strategic Guide (CSG).

59. AO Dubeshter further stated that the MSA role was "shifting" and that she and Complainant would have to sit down to determine the best course for the division so that her goals are met. Complainant replied that AO Dubeshter had imposed five (5) additional objectives in Complainant's performance plan which were not related with her MSA duties, totaling 13 objectives. Those five objectives not in the MSA description were: 1. Recruitment support; 2. Creation of new onboarding TFO's SOP; 3. MSA Mentorship; 4. Records support – send over 200 boxes to HQ; 5. Media support.  AO Dubeshter also had in mind to assign Complainant other special projects, which did not abide to the MSA policy guide section 4.3. Complainant replied that AO Dubeshter was never pleased with her performance, even though she was doing it even against the MSA Policy Guide.  Complainant expressed her frustration with AO Dubeshter as she was not letting Complainant comply with her duties, and it seemed that AO Dubeshter wanted to do Complainant's job. One of the most important things to do as an MSA is to have direct conversation with key personnel to ensure work progress. *It is to be noted that in the Performance Evaluation SAC Gonzalez pointed that Complainant needed more conversation with PCORs and Intelligence Analyst, but the command received from AO Dubeshter was the total opposite as she wants the Complainant to refrain from talking to anyone.* Upon learning of these special projects, job restrictions and limitations, Complainant replied that she would be talking with her husband and would consider resigning her job.

60. On December 11, 2023 Complainant met with SAC Joseph Gonzalez and explained to him  all the disrespectful things that AO Dubeshter had said to her and that she was not letting Complainant do her job, harassing her and creating a hostile work environment for her that was affecting her performance and her health. SAC Gonzalez said that his hands were tied, and that HQ had said that AO Dubeshter was going to be Complainant's supervisor because he did not know how to supervise employees, and nonetheless he still was the appointed SAC.

61. SAC Gonzalez knew that Complainant had been given a reasonable accommodation due to her epileptic condition and that she had done her job satisfactorily all the previous 26½ years in the FBI, yet when confronted with the ADA violation and the hostile environment violation, he choose not to do anything. He could have ordered the installation of

dimmer lights, but did not do so. He could have reassigned the Complainant to an ASAC or to another squad supervisor, but choose not to. SAC Gonzalez violated Harassment Policy Directive 1038D, which requires all supervisors to report any allegation of misconduct or harassment in writing to the INSD's internal Investigation Section.

62. In light of all the events that transpired and others events that are not included herein, Complainant took the decision to resign and submitted her resignation letter on December 11, 2023 to be effective December 16, 2023. She told SAC Gonzalez that her dignity, her self-love and her peace of mind are priceless and not negotiable and that no one had the right to humiliate her, and to disrespect her. That she would not allow that type of behavior towards her.

63. Not all incidents and events of hostile work environment as above described have been mentioned in this complaint in order not to make it too voluminous and Complainant reserves the right to supplement this complaint with further events as warranted.

## V. CAUSES OF ACTION

**First Cause of Action**:

64. The paragraphs stated hereinbefore are literally incorporated herein and are made part of this paragraph.

65. The FBI unlawfully <u>discriminated</u> against Complainant with respect to her terms, conditions and privileges of employment by reason of her disabilities, because it failed to provide the feasible and reasonable accommodations that had been granted and previously given to her, in violation of the ADA.

66. As a direct result of the FBI'S unlawful employment practices, Complainant sustained an aggravation of her physical and mental disabilities; suffered, is suffering and will continue to suffer severe mental, psychological, moral and emotional pain, anguish and distress; increase in daily seizures and migraines and, has sustained a loss of happiness, and a loss of the capacity to enjoy life and professional endeavors.

67. Complainant is entitled to receive, as compensatory damages, the maximum amount allowed by EEOC guidelines in the sum of $300,000.00. In addition, because of the malicious and reckless knowingly discriminatory acts incurred by SAC Gonzalez, Complainant is entitled to another $300,000.00 in punitive damages.

68. As a consequence of the FBI'S unlawful employment practices and the resultant aggravation of Complainant's mental and physical conditions and her emotional injuries, she has incurred in the past and will continue to incur in the future in expenses for psychiatric treatment and medications. Complainant is entitled to receive a reimbursement for these reasonable medical

expenses, which are estimated in the sum of $20,000.00.

69. Pursuant to the ADA, Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C.S. § 1920, Complainant is entitled to be awarded the costs to be incurred in this process, plus reasonable attorney's fees.

70. That FY2023 performance evaluation be changed to consistent performer.

THEREFORE, complainant Raquel Lopez-Munoz demands that Judgment be entered in her favor and against the Defendant, awarding her the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) in compensatory and $300,000.00 in punitive damages; granting her an award for past and future medical treatment, medicines and other analogue expenses, which are estimated in the sum of $20,000.00; awarding her a reasonable amount for attorney's fees, the costs of this action, plus pre-judgment and post-judgment interests; and, granting such other consonant further relief that under the circumstances may seem appropriate.

**Second Cause of Action**:

71. The paragraphs stated hereinbefore are literally incorporated herein and are made part of this paragraph.

72. The FBI unlawfully took <u>retaliatory actions</u> against Complainant because she engaged in protected activities by exercising her right to request reasonable accommodations and to complain about discrimination and retaliation.

73. As a direct result of the FBI's unlawful employment practices, Complainant sustained an aggravation of her physical and mental disabilities; suffered, is suffering and will continue to suffer severe mental, psychological, moral and emotional pain, anguish and distress; and, has sustained a loss of happiness, and a loss of the capacity to enjoy life and professional endeavors.

74. Complainant is entitled to receive, as compensatory damages, the maximum amount allowed by EEOC guidelines and/or by 42 U.S.C. § 1981a.

75. As a consequence of the FBI's unlawful employment practices and the resultant aggravation of Complainant mental and physical conditions and her emotional injuries, she has incurred in the past and will continue to incur in the future in expenses for psychiatric treatment and medications. Complainant is entitled to receive a reimbursement for these reasonable medical expenses, which are estimated in the sum of $20,000.00.

76. The FBI created a working hostile environment against the Complainant. The FBI (1) moved Complainant out of the office that had been provided to her in which she could dim the lights; (2) moved her to share another office; (3) had no computer at the new office; (4) had to

share laptop computer with another employee; (5) was assigned to a new AO who harassed her and twisted the regulations ie: medical leave and re-arranged her job description to handle additional projects, in addition being verbally and aggressively hostile to the Complainant, which resulted in Complainant's resignation.

77. As a direct result of the unlawful discharge, Complainant has sustained a loss of earnings and claims such earnings up to the date that she would qualify for Voluntary Early Retirement Age (VERA) and the Voluntary Incentive Severance Package (VISP), with the Social Security Supplemental by the age of 57.

78. Pursuant to the ADA, Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C.S. § 1920, Complainant is entitled to be awarded the costs to be incurred in this suit, plus reasonable attorney's fees.

79. That FY2023 performance evaluation be changed to consistent performer.

THEREFORE, complainant demands that Judgment be entered in her favor and against the Defendant, awarding her the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) in compensatory damages; granting her an award for past and future medical treatment, medicines and other analogue expenses, which are estimated in the sum of $20,000.00; awarding her a reasonable amount for attorney's fees, the costs of this action, plus prejudgment and post-judgment interests; and, granting such other consonant further relief that under the circumstances may seem appropriate.

**Third Cause of Action**:

80. The paragraphs stated hereinbefore are literally incorporated herein and are made part of this paragraph.

81. The FBI violated Complainant's Fifth Amendment due process constitutional rights in that he told her that she was under investigation for WebTA fraud and did not ever give her any formal information or details as to the specifics of such investigation. To the contrary, SAC Gonzalez kept silent and told her that it was a confidential and/or secret investigation that could never be revealed to anyone. Complainant was never notified by the Office of Professional Responsibility ("OPR") or any other ethical office of any violations to her time attendance record. And was never interviewed by any investigator with regard to the time attendance records. Complainant showed her goodwill and worked 72.25 extra hours without claiming them as a mitigation effort.

82. The fact that SAC Gonzalez never gave Complainant information as to the amount of hours that allegedly she had missed from work and that she was never notified by OPR as to

any investigation, leads her to believe that SAC Gonzalez lied when he told her that an investigation has been opened against her, and that he did so in order to intimidate her and to create a further hostile environment, to force her to quit her job. This constitutes malicious and reckless discrimination that warrants the imposition of punitive damages.

83. As a direct result of the FBI'S unlawful employment practices, Complainant sustained an aggravation of her physical and mental disabilities; suffered, is suffering and will continue to suffer severe mental, psychological, moral and emotional pain, anguish and distress; and, has sustained a loss of happiness, and a loss of the capacity to enjoy life and professional endeavors.

84. Complainant is entitled to receive a full, just and fair compensation for these mental damages.

85. As a consequence of the FBI'S unlawful employment practices and the resultant aggravation of Complainant mental and physical conditions and her emotional injuries, she has incurred in the past and will continue to incur in the future in expenses for psychiatric treatment and medications. Complainant is entitled to receive a reimbursement for these reasonable medical expenses, which are estimated in the sum of $20,000.00.

86. As a direct result of the unlawful discharge, Complainant has sustained a loss of earnings. She is entitled to be offered the Voluntary Early Retirement Age (VERA) and the Voluntary Incentive Severance Package (VISP), with the Social Security Supplemental by the age of 57.

87. That FY2023 performance evaluation be changed to consistent performer.

THEREFORE, complainant demands that Judgment be entered in her favor and against the Defendant, to be offered the Voluntary Early Retirement Age (VERA) and the Voluntary Incentive Severance Package (VISP), with the Social Security Supplemental by the age of 57; granting her the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) in compensatory damages, and doubling such award for a total of SIX HUNDRED THOUSAND DOLLARS ($600,000.00); granting her an award for past and future medical expenses, which are reasonably estimated in the amount of $20,000.00 and to award her a reasonable amount for attorney's fees, the costs of this action, and post-judgment interests; and, granting such other consonant further relief that under the circumstances may seem appropriate.

**Fourth Cause of Action**:

88. The paragraphs stated hereinbefore are literally incorporated herein and are made part of this paragraph.

89. The FBI violated complainant's due process and constitutional property rights in that SAC Gonzalez was not the person to have evaluated her job performance, but he nevertheless gave her an Inconsistent Performer rating because he was told by someone at Headquarters that he needed to give her such an evaluation. This evaluation has an adverse impact on complainant's job record and constitutes a taking of employment opportunities because she was never given the opportunity to defend herself from any investigative charges. She was adjudged and found guilty of inconsistent performance based on a "secret" and/or "confidential" investigation that was never notified to her for her to defend herself.

90. Because of the above, SAC Gonzalez violated complainant due process and constitutional property rights in seeking employment elsewhere, constituting an exacerbation of the hostile environment against the Complainant, and further pushing the Complainant to the point of resigning, as it was evident that even if putting in her best efforts, her superior i.e.: SAC Gonzalez, would label her as an Inconsistent Performer and would find by way of pretext that secret confidential investigation was being done on her and/or that someone at Headquarters told him to do so.

91. The fact that SAC Gonzalez never gave Complainant information as to the amount of hours that allegedly she had missed from work and that she was never notified by OPR as to any investigation, leads her to believe that SAC Gonzalez lied when he told her that an investigation has been opened against her, and that he did so in order to intimidate her and to create a further hostile environment, to force her to quit her job because of her epileptic condition and to avoid any investigation as to his bluff of there being claims of Web TA fraud.

92. As a direct result of the FBI'S unlawful employment practices, Complainant sustained an aggravation of her physical and mental disabilities; suffered, is suffering and will continue to suffer severe mental, psychological, moral and emotional pain, anguish and distress; and, has sustained a loss of happiness, and a loss of the capacity to enjoy life and professional endeavors.

93. Complainant is entitled to receive a full, just and fair compensation for these mental damages.

94. As a consequence of the FBI'S unlawful employment practices and the resultant aggravation of Complainant's mental and physical conditions and her emotional injuries, she has incurred in the past and will continue to incur in the future in expenses for psychiatric treatment and medications. Complainant is entitled to receive a reimbursement for these reasonable medical expenses, which are estimated in the sum of $20,000.00.

95. Since Defendant discharged complainant in violation of ADA has suffered a loss of earnings. She claims her right to Voluntary Early Retirement Age (VERA) and the Voluntary Incentive Severance Package (VISP), with the Social Security Supplemental by the age of 57.

96. That FY2023 performance evaluation be changed to consistent performer.

THEREFORE, complainant demands that Judgment be entered in her favor and against the Defendant, to be offered the Voluntary Early Retirement Age (VERA) and the Voluntary Incentive Severance Package (VISP), with the Social Security Supplemental by the age of 57; granting her the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) in compensatory damages, and doubling such award due to the malicious and reckless discrimination incurred for a total of SIX HUNDRED THOUSAND DOLLARS ($600,000.00); granting her an award for past and future medical expenses, which are reasonably estimated in the amount of $20,000.00; awarding her a reasonable amount for attorney's fees, the costs of this action, and post-judgment interests; with such further consonant relief that under the circumstances may seem appropriate.

## VI. PRAYER FOR RELIEF

WHEREFORE, it is respectfully requested that this Honorable Court grant this complaint in favor of Complainant against the Defendant and as consequence,

a. grant the complainant all the sums requested in the complaint;

b. impose upon Defendant the payment of all costs and expenses to be incurred in this process;

c. grant the Complainant any other relief that she may be entitled to as a matter of law;

d. order Defendant to expunge from her record any reference to an inconsistent performer and to have her FY2023 performance evaluation changed to consistent performer.

e. award the complainant pre-judgment and post-judgment interests, plus a reasonable amount for attorneys' fees.

f. grant the Complainant's application for Voluntary Early Retirement Age (VERA) and the Voluntary Incentive Severance Package (VISP), with the Social Security Supplemental by the age of 57.

RESPECTFULLY SUBMITTED. In Guaynabo, Puerto Rico, this 9th of december 2024.

*s/Jose Vazquez Garcia*

LCDO. JOSE VAZQUEZ GARCIA,
USDC: 201002
Urb. Prado Alto, Calle Uno J-12
Guaynabo, P.R. 00966
Tel. 787-642-4322
Email: jvglaw@aol.com